IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BUBBA MCLELLAND                                                                      PLAINTIFF

v.                                         Case No. 4:17-cv-4007

RIDGE TOOL COMPANY,
d/b/a RIDGID                                                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant Ridge Tool Company's Motion for Summary Judgment. (ECF No. 36). Plaintiff Bubba McLelland filed a response. (ECF No. 43). Defendant filed a reply. (ECF No. 49). The Court finds the matter ripe for consideration.

### I. BACKGROUND

On February 15, 2014, Plaintiff, a master plumber with thirty years' experience, arrived at Burge's Sandwich Shop in Lewisville, Arkansas, to clear a clogged drain line located behind the restaurant. To accomplish this, he brought his Ridgid K-750 Drain Cleaning Machine ("K-750"), a drum-style cleaning machine manufactured by Defendant that is used by professionals for cleaning drain pipes.

The K-750 is powered by an induction motor that rotates a covered drum and cable, allowing the cable to be fed down a drain line to clean the drain. The operator's manual for the K-750 instructs users to operate the K-750 by kneeling next to the machine and grasping the exposed cable with gloved hands to control and support the cable as it is fed into and out of the drain. The manual warns that the cable could twist, kink, or break if the cable is not controlled and if certain procedures are not followed. The manual also instructs users to wear protective eyewear when operating the K-750. The K-750's on-product warning label features similar

instructions and warnings.

After arriving on location, Plaintiff set up the K-750, knelt, and began feeding the cable down the line using the machine's "auto-feed" feature, which deploys the cable using the machine's motor. Plaintiff placed a cutting tool on the end of the cable because he suspected that tree or grass roots might have caused the drain stoppage. Plaintiff was not wearing eye protection and did not grasp the cable as it went into the drain, but he had his open hand close to the cable. Plaintiff could see the cable move as it encountered obstructions in the drain. After roughly fifteen to twenty minutes of continuously feeding the cable into the drain, the cable suddenly broke without warning. The cable struck Plaintiff in the face, causing injuries.

On February 10, 2017, Plaintiff filed the case at bar, asserting three strict product liability claims against Defendant: failure to warn, manufacturing defect, and design defect. On June 11, 2018, Defendant filed the instant motion, arguing that there is no genuine dispute of material fact and that it is entitled to summary judgment on all claims. Plaintiff opposes the motion.

## II. STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either

party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

## III. DISCUSSION

As an initial matter, the Court must address the parties' statements of fact. Defendant's statement of undisputed facts contains seventy-one purported statements of fact. Plaintiff's statement of disputed facts disputes four of Defendant's statements of fact. Defendant argues that Plaintiff has failed to controvert Defendants' statements of undisputed fact, and accordingly, the Court should treat Defendants' statements of fact as admitted.

Federal Rule of Civil Procedure 56(e) states that a court may deem undisputed a party's asserted fact if it is not properly controverted by the other party pursuant to Rule 56(c). Similarly, Local Rule 56.1(c) states that all material facts asserted in the moving party's statement of facts shall be deemed admitted if they are not controverted by the nonmoving party's own statement of facts. Federal Rule of Civil Procedure 56(c)(1) provides that a party asserting a genuine dispute of material fact must support the assertion by either citing to materials in the record or by showing that the cited materials do not establish the absence or presence of a genuine dispute.

The Court finds that Plaintiff has failed to controvert Defendant's statements of undisputed fact. Plaintiff's statement of facts largely fails to satisfy Rule 56(c)(1) because it contains no citations to the record and does not show that Defendant's cited materials fail to establish the absence of a genuine dispute. The sole exception is Plaintiff's first disputed fact, which disputes Defendant's statement that Plaintiff could hear a change in the K-750's motor sounds as the cable encountered obstructions. A review of Defendant's citations to the record in support of this statement reveals that Plaintiff testified in his deposition that he sometimes can hear a change in motor sounds, but that he did not during the events at issue. Except for this particular fact, the Court finds that Defendant's other asserted facts are deemed admitted for summary judgment purposes.

The Court now turns to the substance of the instant motion. To prevail on a claim for strict liability under Arkansas law, Plaintiff must prove that: (1) Defendant engaged in the business of selling a product; (2) the product was supplied in a defective condition which rendered it unreasonably dangerous; and (3) the defective condition was a proximate cause of the harm. Ark. Code Ann. § 16-116-101(a). A "defective condition" is one that renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(2).

Defendant argues that it is entitled to summary judgment as to Plaintiff's three strict product liability claims: failure to warn, manufacturing defect, and design defect. The Court will address each claim in turn.

**A. Failure to Warn**

Plaintiff claims that Defendant failed to provide proper and adequate warnings to him that the K-750 could suffer a cable break even under anticipated use of the machine. Defendant argues that it is entitled to summary judgment on this claim.

Under Arkansas law, it is the plaintiff's burden in a failure-to-warn case to prove that "the warning or instructions provided were inadequate. Once a [p]laintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions." *See Bushong v. The Garman Co.*, 311 Ark. 228, 235, 843 S.W.2d 807, 812 (1992). However, "this presumption may be rebutted by evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Id.*

Defendant argues that Plaintiff has failed to present any evidence to meet his initial burden of showing that the warnings on the K-750 were insufficient. Defendant argues further that, even if Plaintiff had overcome his initial burden, this claim nonetheless fails as a matter of law because Plaintiff testified in his deposition that, over a thirty-year period, he has never read the manuals or warnings on any of his drain cleaning machines, and that he specifically did not read the warning label on the K-750 despite his awareness of the same.

Plaintiff responds that he has credible evidence to support his claim, specifically, the opinions of his expert witness, Don Johnston. Plaintiff argues that this case will likely be determined by expert testimony and, thus, the Court should not grant summary judgment on the issue unless the Court grants Defendant's motion to exclude Mr. Johnston's opinions.[1]

The Court agrees with Defendant. Plaintiff has presented no evidence that the warnings or the instructions for the K-750 were inadequate.[2] Accordingly, the Court finds that Plaintiff's failure-to-warn claim fails because he has not met his initial burden of showing that the warning

---

[1] The Court notes that on August 10, 2018, it granted Defendant's motion to exclude Mr. Johnston's expert testimony and opinions. (ECF No. 53).

[2] Even assuming *arguendo* that Mr. Johnston's expert opinions were allowed, he testified in his deposition that he is not an expert on warnings and explicitly expressed no opinion as to whether the warnings and instructions for the K-750 were inadequate.

or instructions provided with the K-750 were inadequate. *See id.* Moreover, assuming *arguendo* that Plaintiff had satisfied his initial burden, the evidence before the Court demonstrates that an adequate warning would have been futile under the circumstances. *Id.* Plaintiff testified that he has never read the warning for any drain cleaning machine he has owned over a thirty-year period—including the K-750—despite his awareness of the warnings. Accordingly, the Court finds that this evidence would necessarily persuade any reasonable trier of fact that an adequate warning on the K-750 would have been futile because Plaintiff would not have read it. *See id.* (affirming summary judgment on failure-to-warn claim where the plaintiff admitted he had never read a warning label on the product at issue).

For these reasons, the Court finds that there is no genuine dispute of material fact and that Defendant is entitled to summary judgment on Plaintiff's failure-to-warn claim.

### B. Manufacturing Defect

Plaintiff claims that Defendant's K-750 suffered from a manufacturing defect that proximately caused his injuries. Defendant argues that it is entitled to summary judgment on this claim.

To prevail on a strict liability manufacturing defect claim, Plaintiff must demonstrate that a defect in the manufacture of the K-750 was the proximate cause of his injuries, and that the K-750 was in a defective condition when it left Defendant's hands. *See Lee Cnty., Ark. v. Volvo Const. Equip. N. Am., Inc.*, No. 2:07-cv-0082-BSM, 2008 WL 4999063, at *4 (E.D. Ark. Nov. 20, 2008) (citing *Higgins v. Gen. Motors Corp.*, 250 Ark. 551, 555, 465 S.W.2d 898, 900 (1971)).

> In the absence of direct proof that the product is defective because of a manufacturing flaw . . . [the] plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant. The mere possibility that a defendant sold a product which he should not have sold and that it caused the injury is not enough.

*Id.* (internal citations omitted).

Defendant argues that Plaintiff has offered no evidence to establish that the K-750 at issue was defectively manufactured, or to negate all other possible causes of the incident. Defendant states that Mr. Johnston's expert report expressed no opinions regarding a manufacturing defect, and that Mr. Johnston did not attempt to test the K-750 or negate any other possible causes of the incident.

Plaintiff responds that he has credible evidence to support his claim, specifically, Mr. Johnston's expert opinions. Plaintiff argues that this case will likely be determined by expert testimony and, thus, the Court should not grant summary judgment on the issue unless the Court excludes Mr. Johnston's expert opinions.

Upon consideration, the Court agrees with Defendant. As previously discussed, the Court has excluded Mr. Johnston's expert testimony and opinions. Plaintiff has offered no other evidence to establish that the K-750 was defectively manufactured. Plaintiff has also not offered any evidence to negate any other possible causes of the incident. Accordingly, the Court finds that Plaintiff has failed to raise a reasonable inference that the alleged manufacturing defect was the cause of his accident. *See id.* at *7. Accordingly, the Court finds that Plaintiff's manufacturing-defect claim fails.

For these reasons, the Court finds that there is no genuine dispute of material fact and that Defendant is entitled to summary judgment as a matter of law on Plaintiff's manufacturing-defect claim.

**C. Design Defect**

Plaintiff claims that Defendant's K-750 suffered from a design defect which proximately caused Plaintiff's injuries. Defendant argues that it is entitled to summary judgment on this claim.

Design-defect claims are distinct from manufacturing-defect claims. *Simpson v. Wright Med. Grp., Inc.*, No. 5:17-CV-0062-KGB, 2018 WL 1570795, at *9 (E.D. Ark. Mar. 30, 2018). "Manufacturing defects involve a configuration of a product that deviates from the intended design, while design defects involve a design that is executed according to plan but produces unintended and unwanted results." *Id.*

To prevail on his strict liability design defect claim, Plaintiff must demonstrate that a defect in the design of the K-750 was the proximate cause of his injuries, and that the K-750 was in a defective condition when it left Defendant's hands. *Lee Cnty., Ark.*, 2008 WL 4999063, at *4 (applying Arkansas law). A defective design can be established under Arkansas law without proof of a safer alternative design. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 846 (8th Cir. 2001). However, "[w]hen a plaintiff's sole proof of a defective design is the designer's choice not to pursue a safer design, the evidentiary burden is on the plaintiff to show that the safer alternative design he or she advocates actually exists." *Id.* Plaintiff does not have to prove that his proposed alternative design is "available and feasible in terms of cost, practicality, and technological possibility," but he must prove that his proposed design will actually work. *Dancy v. Hyster Co.*, 127 F.3d 649, 654 (8th Cir. 1997) (applying Arkansas law). This showing often requires expert testimony. *See id.*; *Meza v. Ford Motor Co.*, No. 2:11-cv-2069-PKH, 2012 WL 1570040, at *2 (W.D. Ark. May 1, 2012) (noting that "the type of product defect that is most likely to require expert testimony is that of design defect").

Defendant argues that Plaintiff's design-defect claim fails because Mr. Johnston's expert opinions should be excluded and that Plaintiff cannot satisfy his burden without expert testimony. Defendant argues alternatively that, even if the Court allows Mr. Johnston to testify, his opinions are speculative and do not show that his proposed alternative safety measures actually work and

would have prevented Plaintiff's injuries.

Plaintiff responds that Mr. Johnston's expert opinions support his design-defect claim. Plaintiff argues that this case will likely be determined by expert testimony and, thus, the Court should not grant summary judgment on the issue unless the Court excludes Mr. Johnston's expert opinions.

Upon consideration, the Court agrees with Defendant. As previously noted, the Court has excluded Mr. Johnston's expert opinions. Plaintiff offers no other evidence regarding the proposed alternative safety measures, whether they work, and whether they would have prevented his injuries. The design-defect claim fails for this reason.

Moreover, even assuming *arguendo* that the Court allowed Mr. Johnston's opinions, the Court finds that Plaintiff's claim would still fail. Mr. Johnston testified at his deposition that he believed that Defendant could have prevented the K-750's cable from breaking and injuring Plaintiff by implementing "cable control systems" or the "audible and visual signals" found on certain of Defendant's other models of drain cleaning machines. However, he also admitted that he had not conducted any testing to support his opinions. He did not test or examine any drain cleaning machine, including the K-750, while forming his opinions. He did not attempt to reconstruct the accident by breaking a cable on a K-750. He testified that he does not know how the "cable control systems" or the "audible and visual signals" found on certain of Defendant's other machines work, but he assumes the features are effective because "if [Defendant is] doing something like that, it probably works or they wouldn't be advertising it." (ECF No. 47-1, p. 50). The Court finds that, if allowed, Mr. Johnston's speculative opinions fail to show that his proposed alternative designs actually work and would have prevented Plaintiff's injuries. *Dancy*, 127 F.3d at 654. Accordingly, the Court finds that Plaintiff's design-defect claim fails.

9

For these reasons, the Court finds that there is no genuine dispute of material fact and that Defendant is entitled to summary judgment on Plaintiff's design-defect claim.

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 36) should be and hereby is **GRANTED**.  Plaintiff's case is hereby **DISMISSED WITH PREJUDICE**.  A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 13th day of August, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge